Stewart R. Pollock (SBN 301356)
spollock@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LATISHA SATCHELL, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT FOR:** |
| v. | **(1) Violations of the Electronic Communications Privacy Act 18 U.S.C. §§ 2510, *et seq.*** |
| SONIC NOTIFY, INC. d/b/a SIGNAL360, a Delaware Corporation, YINZCAM, INC., a Pennsylvania Corporation, and GOLDEN STATE WARRIORS, LLC, a California Limited Liability Company, | **DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiff LaTisha Satchell ("Plaintiff or "Satchell") brings this Class Action Complaint ("Complaint") against Defendants Sonic Notify, Inc. d/b/a Signal360 ("Signal360"), Yinzcam, Inc. ("Yinzcam"), and Golden State Warriors, LLC ("Golden State")(collectively "Defendants") based on their unlawful practice of systemically and surreptitiously intercepting consumers' oral communications without their consent. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.     Golden State is one of the premier sports and entertainment organizations in the

National Basketball Association ("NBA"), combining its success on the court with its desire to be at the forefront of technology and fan entertainment off the court.

2.      Like many other NBA organizations, Golden State offers a mobile application ("App") for its fans. The App, which was developed by Defendant Yinzcam, provides an interactive experience for fans by delivering scores, news, and other information relevant to the organization.

3.      In 2014, in furtherance of its desire to remain a technological leader among NBA organizations, Golden State partnered with Defendant Signal360 to integrate Signal360's beacon technology.[1] Beacons are a novel method to track consumers and how they interact with marketing and advertisements. For instance, with beacons, advertisers might be able to discern when a consumer is looking at a specific billboard—something previously unprecedented. With the App, Signal360's software allows Golden State to target specific consumers and send them tailored content, promotions, or advertisements based on their location.

4.      The App determines a consumer's precise location by listening for nearby Signal 360 audio beacons by (secretly) activating a consumer's smartphone's built-in microphone ("Microphone"). With the Microphone activated, the App listens to and records *all* audio within range—including consumer conversations. If the App "hears" one of Signal360's beacons it may display an ad to the consumer or simply send that information to Signal360.

5.      Even more disconcerting, the App turns on the Microphone (listening in and recording) any time the App is running. No matter if a consumer is actively using the App or if it is merely running in the background: The App is listening.

6.      Unfortunately for consumers, Defendants never inform them that their smartphones are being turned into listening devices nor do they ever seek consent. Accordingly, this putative class action seeks (1) to prevent Defendants' continued nonconsensual listening and recording of consumer conversations, and (ii) statutory and punitive damages for violations under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "ECPA").

---

[1]      *Signal360*, http://www.signal360.com/#solution (last visited Aug. 26, 2016).

**PARTIES**

7.     Plaintiff LaTisha Satchell is a natural person and resident and citizen of the State of New York.

8.     Defendant Sonic Notify, Inc. d/b/a Signal360 is a corporation existing under the laws of Delaware, with its headquarters and principal place of business located at 419 Park Ave., 7th Floor, New York City, New York, 10016. Signal360 conducts business throughout this District, the State of California, and the United States.

9.     Defendant Yinzcam, Inc. is a corporation existing under the laws of Pennsylvania, with its headquarters and principal place of business located at 6616 Beacon Street, Pittsburgh, Pennsylvania, 15217. Yinzcam conducts business throughout this District, the State of California, and the United States.

10.    Defendant Golden State Warriors, LLC is a limited liability company existing under the laws of California, with its headquarters and principal place of business located at 1011 Broadway, Oakland, California, 94607. Golden State conducts business throughout this District, the State of California, and the United States and is registered to do business in this State (entity number 200420110060).

**JURISDICTION AND VENUE**

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, a federal statute.

12.    This Court has personal jurisdiction over Defendant Signal360 because it conducts business in California and because the unlawful events giving rise to this lawsuit occurred, in part, in California.

13.    This Court has personal jurisdiction over Defendant Yinzcam because it conducts business in California and because the unlawful events giving rise to this lawsuit occurred, in part, in California.

14.    This Court has personal jurisdiction over Defendant Golden State Warriors, LLC

because it is headquartered in this District, conducts significant business in California, and because the unlawful events giving rise to this lawsuit occurred, in part, in California.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District. 28 U.S.C. § 1391(b).

<b>INTRADISTRICT ASSIGNMENT</b>

16.     Pursuant to Civil Local Rule 3-2(d), this case has been assigned to the San Francisco Division.

<b>FACTUAL BACKGROUND</b>

**I.     An Introduction to Beacon Surveillance Technology.**

17.     As introduced above, "beacons" are new technologies that seek to track and monitor consumers and how they interact with advertisements and marketing.[2] Fundamental to beacon technology is the smartphone, which consumers carry on their person everywhere they go. And, built into these smartphones are a plethora of radio transmitting and receiving devices, including a "Bluetooth" radio.

18.     Bluetooth is a wireless personal area network technology used for transmitting data over short distances. A smartphone with Bluetooth will invariably attempt to communicate with other Bluetooth devices in its vicinity. While those other Bluetooth devices take the form of hands-free car radios, headphones, or stereos, marketers found a new use—canvasing Bluetooth devices in specific locations (e.g., retail stores) that exist only to capture an attempted Bluetooth connection. By monitoring which Bluetooth radio (and the corresponding smartphone and owner) attempts to connect to the placed-Bluetooth devices, marketers can track the physical path a smartphone takes through that location.

19.     For instance, suppose a department store placed a Bluetooth beacon in Men's shoes, accessories, and kids departments. A consumer's smartphone, while the consumer navigates from

---

[2]     *Beacon Technology: The Where, What, Who, How and Why,*
http://www.forbes.com/sites/homaycotte/2015/09/01/beacon-technology-the-what-who-how-why-and-where/#668c740b4fc1 (last visited Aug. 26, 2016).

the Men's shoes department to the kids department, would inevitably attempt to connect to the beacon in the Men's shoes and then the kids departments. The retailer now would have a record of that path, which may inform the retailer on certain consumer behavior.

20.     The next logical step for marketers was to create beacons that interact more fully with consumer's smartphone. In that same example described above, the retailer might want to cause the consumer's smartphone to "pop up" an alert whenever he or she enters the kids department. The pop up could be simple text advertising a sale or even a coupon. For this to work, however, the retailer would need access to the consumer's smartphone through an application or a system-wide protocol.

21.     Because beacon tracking is inherently invasive (consumers are continuously tracked), industry standards dictate that consumers opt-in to beacon tracking.[3] Often, the form of the opt-in is through the Apple iBeacon protocol in Apple iPhones, or through an application developer's mobile application. If the retailer, in the example above, operates their own mobile application they might seek consent through an explicit disclosure or, at least, a privacy policy.

22.     Defendant Signal360 utilizes Bluetooth beacons and a novel beacon technology called audio beacons. *See* Figure 1, on the following page. Defendants' audio-based beacon technology, in contrast to Bluetooth beacon technology, requires Defendants to ascertain a consumer's physical location through sounds rather than through radio signals. Instead of canvasing a location with only Bluetooth devices, Signal360 places speakers throughout locations. Each speaker is mapped to a location and emits a unique audio signal. A device that can "hear" a Signal360 audio beacon must be near that speaker. As such, Signal360 is able to quickly ascertain the location of that device and its approximate distance from the speaker.

---

[3] *Id*.

(**Figure 1**.)

23.     But for the technology to work, Signal360 requires a microphone to continuously listen for its audio signals. For that, Signal360 involuntarily enlists thousands of sports fans that have downloaded and installed apps from their favorite teams.

## II.     Defendants Partner To Include Audio Beacons in the Warriors' App.

24.     Like most sports teams, the Golden State Warriors offer their App for free download in the Google Play Store (the "Play Store"). To date, the App has been downloaded between 100,000 and 500,000 times.[4] Defendants Golden State and Yinzcam market the App, stating:

> This is the official mobile app of the Golden State Warriors. It delivers an unrivaled interactive team experience by providing the most up-to-date scores, schedules, news, stats, highlights, and photos. The Golden State Warriors app is the easiest way to keep up with everything Warriors basketball. Enhanced with arena information and other amenity features, the Golden State Warriors app is your ultimate game night companion.[5]

25.     Among the specific features the App advertises is the ability for consumers to "View live stats, scores and standings" and to "Use #DubNation to share [their] game experience by uploading photos and videos to Facebook, Twitter, Instagram, Pinterest, Google+, Tumblr and more."

26.     Just as with any other application for download in the Play Store, the App asks for

---

[4]     *Golden State Warriors - Android Apps on Google Play*,
http://web.archive.org/web/20160122133224/https://play.google.com/store/apps/details?id=com.yinzcam.nba.warriors&hl=en (last visited Aug. 26, 2016).

[5]     *Id.*

1  certain "permissions." Defendants programmed the App to ask for the following permissions:

 

(**Figure 2.**)                              (**Figure 3.**)

27.  Notably absent from the permission list is a request to "opt-in" to the beacon technology—Bluetooth or audio. While the permissions include "microphone," Defendants do not provide any context or information regarding the "microphone." Indeed, a reasonable consumer would view the permission, which is requested right after "Camera," as relating to videos, one of the primary advertised features of the App.

28.  Moreover, the App's Terms of Service, Privacy Policy, and system settings' entries are equally silent as to the App's use of beacons.[6] At no time do Defendants disclose to consumers that the App uses beacon technology. And, Defendants have not disclosed that the Warriors App uses audio beacon technology that surreptitiously turns on consumers' smartphone microphones and listens in.

**III.   Defendants Hijack Users Smartphones And Turn Them Into Listening Devices.**

29.  A forensic accounting of the App reveals exactly how the App operates and uncovers

_____

[6]     *Mobile App Privacy Policy*, http://www.yinzcam.com/?page_id=234 (last visited Aug. 26, 2016).

1    Defendants' ability to remotely eavesdrop on consumers' lives.

2        30.    Upon startup, the App does not seek permission to begin listening in. Instead,

3    Defendants programmed the App to instantly turn on the consumers' Microphone. Once

4    downloaded and opened, the App turns on a consumer's Microphone, listening and picking up any

5    and all audio within range of the Microphone. The App continues listening until it is closed—either

6    when the consumer's smartphone is shut off or when the consumer "hard closes" the App (e.g., by

7    stopping the App process). By design, the App listens when it is running in the background, such as

8    when a consumer uses the App but then presses the home button, switches to another app, or shuts

9    of the smartphone's screen.

10        31.    When it's listening (effectively all the time), the App temporarily records portions of

11    the audio for analysis. Defendants programmed the App to analyze and monitor the picked-up audio

12    for any of the Signal360 beacon tones. For instance, if the App hears a transmitter's audio signal in

13    its recordings, the App will automatically respond by, for instance, displaying banner

14    advertisements to the consumer or by chronicling consumer location for later analysis.

15        32.    To be most effective, Defendants' audio-based beacon technology's listening process

16    must be allowed to enable a Microphone at any and all times while the App is running on a

17    smartphone. This allows Defendants' audio-based marketing tool to determine when a consumer is

18    within range of an audio-based beacon transmitter and when they are not (e.g., the consumer has

19    changed locations). Regardless of whether it's being actively used or running in the background, a

20    consumer is still ignorant the App's listening capabilities.

21                   **FACTS RELATED TO PLAINTIFF LATISHA SATCHELL**

22        33.    Plaintiff LaTisha Satchell downloaded the App on or about April 2016. As soon as

23    the App downloaded, Plaintiff opened the App. Plaintiff continued to use the App to follow the

24    progress of the Golden State Warriors. Plaintiff stopped using the App on or about July 11, 2016.

25        34.    From April 2016 until July 11, 2016, Plaintiff carried her smartphone on her person.

26    She would take her smartphone to places where she would not invite other people, and to places

27    where she would have private conversations. That is, her phone was present in locations and

28                                        8

personal and private situations not generally accessible to the public where the expectation was that her conversations were to remain private.

35.     Unbeknownst to Plaintiff and without her consent, Defendants programmed the App to turn on her smartphone's Microphone and listen-in. Specifically, because Plaintiff carried her smartphone to locations where she would have private conversations and the App was continuously running on her phone, Defendants App listened-in to private oral communications.

36.     At no time did Plaintiff consent to the App using her Microphone to continuously listen-in to her oral conversations.

## CLASS ALLEGATIONS

37.     **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> **Signal360 Class:** All individuals in the United States who downloaded and opened any mobile application from the Google Play store that included but did not disclose the presence of Signal360 audio beacon code.
>
> **Golden State Class:** All individuals in the United States who downloaded and opened the Golden State Warriors mobile application.

Excluded from the Classes (the "Class," unless otherwise specified) are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current, former, purported, and alleged employees, officers, and directors; (3) counsel for Plaintiff and Defendants; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants.

38.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have listened in on thousands of consumers who fall into the Class definition. Ultimately, the Class members will be easily identified through Defendants' records.

39.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not necessarily limited to the following:

a)   whether Defendants listened to and/or recorded the Class members' oral communications;

b)   whether Defendants obtained consent to listen to and/or record the Class members' oral communications;

c)   whether Defendants used the contents of Class members' oral communications for Defendants' benefit;

d)   whether Defendants' conduct violates the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*; and

e)   whether Plaintiff and the Class members are entitled to equitable relief as well as actual and/or statutory damages resulting from Defendants' conduct.

40.   **Typicality**: Plaintiff's claims are typical of the claims of all the other Class members. Plaintiff and the Class members sustained substantially similar damages as a result of Defendants' uniform wrongful conduct, based upon the same interactions that were made uniformly with Plaintiff and the public.

41.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other Class members.

42.   **Policies Generally Applicable to the Classes**: Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes.

43.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class

1  members will likely be relatively small, especially given the burden and expense of individual

2  prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be

3  virtually impossible for individual Class members to obtain effective relief from Defendants'

4  misconduct. Even if Class members could sustain such individual litigation, it would still not be

5  preferable to a class action, because individual litigation would increase the delay and expense to all

6  parties due to the complex legal and factual controversies presented in this Complaint. By contrast,

7  a class action presents far fewer management difficulties and provides the benefits of single

8  adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of

9  time, effort, and expense will be fostered and uniformity of decisions ensured.

10     44.     Plaintiff reserves the right to revise the Class Definitions and Class Allegations

11  based on further investigation, including facts learned in discovery.

12                                    **FIRST CAUSE OF ACTION**
                         **Violation of the Electronic Communications Privacy Act**
13                                    **Against Defendant Signal360**
                                     **18 U.S.C. §§ 2510, *et seq.***
14                         **(On Behalf of Plaintiff and the Signal360 Class)**

15     45.     Plaintiff incorporates by reference the foregoing allegations.

16     46.     The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* prohibits

17  any person from intentionally intercepting any oral communication or from intentionally using, or

18  endeavoring to use, the contents of any oral communication while knowing or having reason to

19  know that the information was obtained through the interception of an oral communication. 18

20  U.S.C. §§ 2511(1)(a), (d).

21     47.     Plaintiff and each member of the Signal360 Class downloaded and installed an

22  application with Defendant Signal360's audio beacon technology built in.

23     48.     During the time Plaintiff and the members of the Signal360 Class had (or still have)

24  the applications with Defendant Signal360's audio beacon technology built in, Defendant Signal360

25  intercepted (by listening in and recording) Plaintiff's and the Signal360 Class's private

26  conversations, including oral communications, where Plaintiff and the Signal360 Class exhibited

27  expectations that such communications were to remain private and would not otherwise be subject

28

to interception under circumstances justifying such expectation. 18 U.S.C. § 2510(2).

49.    Defendant Signal360 did not inform nor obtain consent from Plaintiff and the Signal360 Class to listen in and/or record their private conversations. Plaintiff and the Signal360 Class had no reason to know or suspect that Defendant Signal360 would constantly and continuously record and analyze their conversations.

50.    As detailed herein, Defendant Signal360 programmed applications with its audio beacon technology to listen to and record oral communications belonging to Plaintiff and members of the Class as soon as technically feasible and use the contents of those communications to its economic benefit, including for marketing purposes.

51.    At all times, Defendant Signal360 acted intentionally by programming the audio beacon technology and partnering with app developers to include in their applications and to turn on consumers' Microphones without consent.

52.    As a proximate cause of Defendant Signal360's violation of the ECPA, Plaintiff and members of the Class have been injured by and through the wear and tear on their smartphones, consuming the battery life of their smartphones, and diminishing their use, enjoyment, and utility of their devices.

53.    Plaintiff and the members of the Signal360 Class suffered harm as a result of Defendant Signal360's violations of the ECPA, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant Signal360 as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of the Electronic Communications Privacy Act**
**Against All Defendants**
**18 U.S.C. §§ 2510, *et seq.***
**(On Behalf of Plaintiff and the Golden State Class)**

54.    Plaintiff incorporates by reference the foregoing allegations.

55.    The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* prohibits

12

any person from intentionally intercepting any oral communication or from intentionally using, or endeavoring to use, the contents of any oral communication while knowing or having reason to know that the information was obtained through the interception of an oral communication. 18 U.S.C. §§ 2511(1)(a), (d).

56.    Plaintiff and each member of the Golden State Class downloaded and installed the Golden State App with Defendant Signal360's audio beacon technology built in.

57.    During the time Plaintiff and the members of the Golden State Class had (or still have) Defendants' App on their smartphones, Defendants intercepted (by listening in and recording) Plaintiff's and the Golden State Class's private conversations, including oral communications, where Plaintiff and the Golden State Class exhibited expectations that such communications were to remain private and would not otherwise be subject to interception under circumstances justifying such expectation. 18 U.S.C. § 2510(2).

58.    Defendants did not inform nor obtain consent from Plaintiff or the Golden State Class to listen to and record their private conversations. Plaintiff and the Golden State Class had no reason to know or suspect that the App would constantly and continuously record and analyze their conversations.

59.    As detailed herein, once the App is downloaded and opened on their smartphones, Defendants listen to and record oral communications belonging to Plaintiff and members of the Class and use the contents of those communications to their economic benefit, including for marketing purposes.

60.    At all times, Defendants acted intentionally by programming the App to specifically turn on consumers' Microphones without consent.

61.    As a proximate cause of Defendants' violation of the ECPA, Plaintiff and members of the Golden State Class have been injured by and through the wear and tear on their smartphones, consuming the battery life of their smartphones, and diminishing their use, enjoyment, and utility of their devices.

62.    Plaintiff and the Golden State Class members suffered harm as a result of

Defendants' violations of the ECPA, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff LaTisha Satchell, on behalf of herself and the Classes, respectfully requests that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff LaTisha Satchell as representative of the Classes, and appointing her counsel as Class Counsel;

B.      Declaring that Defendants' actions, as described herein, violate the Electronic Communications Privacy Act (18 U.S.C. §§ 2510 *et seq.*);

C.      Awarding statutory damages in the amount of whichever is the greater of (a) the sum of actual damages suffered plus any profits Defendants earned through its unlawful conduct, or (b) the greater of $100 per Class member, per day of Defendants' violations, or $10,000 per Class member, pursuant to 18 U.S.C. § 2520(c)(2);

D.      Awarding punitive damages as appropriate;

E.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class members, including, *inter alia*, an order prohibiting Defendants from listening to and recording consumer oral communications in compliance with the ECPA;

F.      Awarding Plaintiff and the members of the Classes their reasonable litigation expenses and attorneys' fees;

G.      Awarding Plaintiff and the members of the Classes pre- and post-judgment interest, to the extent allowable; and

H.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

14

Respectfully submitted,

**LATISHA SATCHELL**, individually and on behalf of all others similarly situated,

Dated: August 29, 2016

By: /s/ Stewart R. Pollock
One of Plaintiff's Attorneys

Stewart R. Pollock (SBN 301356)
spollock@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

15