LAW OFFICES OF STEPHEN M. FLYNN
STEPHEN M. FLYNN (245823)
(smflynn@smflynn-law.com)
71 Stevenson Street, Suite 400
San Francisco, CA 94105
Telephone:     415-655-6631
Facsimile:     415-655-6601

LAW OFFICE OF SCOTT M. HARE
SCOTT M. HARE (Pa. I.D. No. 63818)
(admission *pro hac vice* pending)
(Scott@ScottLawPGH.com)
1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
Telephone:     412-338-8632
Facsimile:     888-316-2823

*Attorneys for Defendant YinzCam, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **LATISHA SATCHELL**, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>    v.<br><br>**SONIC NOTIFY, INC.** d/b/a **SIGNAL360**, a Delaware Corporation,<br>**YINZCAM, INC.**, a Pennsylvania Corporation, and<br>**GOLDEN STATE WARRIORS, LLC**, a California Limited Liability Company,<br><br>    *Defendants.* | Case No. 4:16-cv-04961-JSW<br><br>**DEFENDANT YINZCAM, INC. NOTICE OF MOTION AND MOTION TO DISMISS WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     January 27, 2017<br>Time:    9:00 a.m.<br>Room:   Courtroom 5 – 2nd Floor<br>Judge:   Honorable Jeffrey S. White |

1

2

## NOTICE OF MOTION ~ AND ~ MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

4

5

6

7

8

9

      **PLEASE TAKE NOTICE** that on **January 27, 2017 at 9:00 a.m.**, or as soon thereafter as this matter may be heard by the Honorable Jeffrey S. White in Courtroom 5 of the United States District Court for the Northern District of California, located at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant YinzCam, Inc. will move and hereby does move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for an order dismissing Plaintiff's Class Action Complaint [ECF Doc. No. 1] with prejudice.

10

11

12

13

14

15

      The Complaint alleges one count against YinzCam for alleged violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*. Plaintiff lacks standing to bring this action (either on her own behalf or on behalf of the putative class) and, furthermore, fails to state a claim as a matter of law, and accordingly the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

16

17

18

19

20

      This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Complaint and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUES TO BE DECIDED

1.      Whether Plaintiff lacks Article III standing where she failed to identify any concrete injury-in-fact, and instead recites solely on *de minimis* and incidental intrusions such as battery drain and similar resource use to her smartphone. SUGGESTED ANSWER: YES.

2.      Whether Plaintiff has failed to state a claim against YinzCam or any Defendant where she failed to identify a single communication that was "intercepted" by any Defendant within the meaning of the ECPA. SUGGESTED ANSWER: YES.

## SUCCINCT STATEMENT OF FACTS

Plaintiff attempts to state claims against YinzCam and two other Defendants for alleged violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*. ("ECPA"). (Compl. *passim*.) In so doing, Plaintiff's entire corpus of allegations against YinzCam consists of exactly two assertions, namely, (1) that "The [Golden State Warriors' team] App, which was developed by Defendant Yinzcam, provides an interactive experience for fans by delivering scores, news, and other information relevant to the organization" and (2) that "Defendants Golden State and Yinzcam market the App." (Compl. ¶¶ 2, 24.) Indeed, apart from introductory and jurisdictional paragraphs, these two paragraphs constitute the *only mention* of YinzCam in Plaintiff's fifteen-page Complaint. Id. The Complaint fails to identify any conduct by YinzCam apart from the development and marketing of the App. (Compl. *passim*.)

In lieu of further factual allegations directed to YinzCam, Plaintiff's claims against YinzCam depend entirely on allegations of conduct by "Defendants," collectively and without differentiation. (Compl. *passim*.) However, even as to these unspecific collective allegations, Plaintiffs' Complaint remains factually sparse.

Plaintiff alleges that Defendant Signal360 utilizes a novel audio beacon technology to discern a user's physical location within a sports venue equipped with speakers emitting a unique audio signal. (Compl. ¶¶ 4, 22.) The Golden State Warriors partnered with Signal360 to integrate the beacon technology, enabling the Warriors to target specific consumers and send them tailored content, promotions, or advertisements based on their location. (Compl. ¶ 3.)

Plaintiff alleges that the beacon technology "determines a consumer's precise location by listening for nearby Signal 360 audio beacons by (secretly) activating a consumer's smartphone's built-in microphone ('Microphone')." (Compl. ¶ 3.) Plaintiff alleges that "the App **listens to and records all audio within range—including consumer conversations** [emphasis added]. If the App 'hears' one of Signal360's beacons it may display an ad to the consumer or simply send that information to Signal360. Even more disconcerting, the App turns on the Microphone (listening in and recording) any time the App is running. No matter if a consumer is actively using the App or if it is merely running in the background: The App is listening." (Compl. ¶¶ 4, 22.)[1]

Plaintiff alleges that she downloaded the App in April 2016 and immediately commenced use, but halted any further use on or about July 11, 2016. (Compl. ¶ 33.) She alleges that, in the

---

[1]    YinzCam is mindful that Plaintiff's well-pled factual allegations are taken as true for purposes of this motion to dismiss. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986) (in deciding a motion to dismiss, all material allegations in the complaint are taken to be true). Nevertheless, lest the Court harbor misgivings that dismissal of the Complaint would embolden the "Defendants," or any of them, to continue "secretly" listening in and recording users' private conversations, it bears observing that the Complaint utterly misperceives the method by which the beacon technology operates. Most importantly, the beacons operate *solely* at inaudible, ultrasonic frequencies. Before any signal is processed, the utility filters out and discards all sound outside the target ultrasonic frequencies, including, critically, all sound within the frequencies of the human voice. Further, the utility samples the inaudible, ultrasonic signal for mere milliseconds at a time, which is sufficient to discern the user's location within the venue. As such, even if the utility "listened" to audible frequencies (and it does not), the sample is far too short to perceive the contents or meaning of any communication. Further still, the utility does not record any sound (audible or inaudible), much less record conversations, and does not store or transmit any such recordings, but rather calculates user location entirely on the smartphone device itself.

1   interim, she "would take" her smartphone to places where "she would not invite other people, and

2   to places where she would have private conversations." (Compl. ¶ 34.) Plaintiff alleges that she

3   was injured by Defendants' unauthorized use of the microphone on her smartphone, namely, "the

4   wear and tear on their smartphones, consuming the battery life of their smartphones, and

5   diminishing their use, enjoyment, and utility of their devices." (Compl. ¶ 61.)

6   Conspicuously, apart from these generic and formulaic recitations of unspecified

7   conversations that Defendants allegedly monitored, listened to and recorded, Plaintiff fails to

8   identify even a *single* conversation, on a specific date, at a specific location, with a specific

9   counterparty that Defendants intercepted in violation of the ECPA. (Compl. *passim*.)

**STANDARD OF REVIEW**

YinzCam moves for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**A.      Standard Governing a Motion under Rule 12(b)(1)**

In similar circumstances, this Court recently recited the standard governing a motion

challenging a plaintiff's standing under Rule 12(b)(1):

> The Court evaluates the motion to dismiss for lack of Article III standing pursuant to Rule 12(b)(1). *See* White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendant raises a facial challenge to Plaintiff's standing. Therefore, the Court "must accept as true all material allegations in the complaint, and must construe the complaint in" Plaintiff's favor. Chandler v. State Farm Mut. Auto Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010) . . ."The jurisdictional question of standing precedes, and does not require, analysis of the merits." Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008).

Supply Pro Sorbents, LLC v. RingCentral, Inc., No. C 16-02113 JSW, 2016 U.S. Dist. LEXIS

140033, at *3-4 (N.D. Cal. Oct. 7, 2016)(White, J.).

If a plaintiff fails to allege concrete, particularized harm, she lacks Article III standing and

dismissal is warranted. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635

(2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"). For this reason, Plaintiff may not "allege a bare procedural violation, divorced from any real harm, and satisfy the injury-in-fact requirement of Article III." Id.

**B.     Standard Governing a Rule 12(b)(6) Motion to Dismiss**

The pleading requirements governing Plaintiff's Complaint and the standard governing a motion to dismiss under Rule 12(b)(6) are well-defined:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atl. Corp. v. Twombly], 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). **A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."** 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. **Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."** Id., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."** Id., at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. **A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.** Id., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. **Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"** Id., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (U.S. 2009)(emphasis added); see also Supply Pro Sorbents, 2016 U.S. Dist. LEXIS 140033, at *4-5. A plaintiff cannot be excused from meeting these minimum pleading requirements on the argument that discovery might reveal supporting facts, because Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79. To the contrary, factual allegations "must be enough to raise a right to relief above the speculative level," and assert a cause of action with

"enough heft to 'sho[w] that the pleader is entitled to relief,'" and "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 545, 570. The plausibility standard set forth in Twombly obligates plaintiff to "provide the grounds of [its] entitlement to relief" through more than "labels and conclusions, [or] a formulaic recitation of the elements of [its] cause of action . . . ." <u>Id</u>. at 555 (citations omitted).

## ARGUMENT

### I. Plaintiff Lacks Article III Standing

Plaintiff's Complaint should be dismissed with prejudice for lack of subject matter jurisdiction because Plaintiff fails to demonstrate that she suffered a concrete injury-in-fact. To the contrary, Plaintiff alleges only that she suffered wear and tear, battery consumption and diminished use, enjoyment, and utility of her smartphone during the three months while the App was installed. These formulaic and unmeasured *de minimis* intrusions fail to demonstrate a concrete injury-in-fact sufficient to create Article III standing.

Just five months ago, the Supreme Court reiterated that "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), <u>quoting</u> <u>Raines v. Byrd</u>, 521 U. S. 811, 818, 117 S. Ct. 2312 (1997). Federal-court standing is carefully guarded: "Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. <u>Lujan</u>, 504 U. S., at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. <u>Id</u>., at 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 . . . The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

1   FW/PBS, Inc. v. Dallas, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Where, as

2   here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each

3   element. Warth, supra, at 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343." Spokeo, id. at 1547.

4
    As in this case, Spokeo "primarily concerns injury in fact, the '[f]irst and foremost' of

5   standing's three elements [citation omitted]." As the Court further explained:

6
7           Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase
            Article III's standing requirements by statutorily granting the right to sue to a plaintiff who
8           would not otherwise have standing.' Raines, supra, at 820, n. 3, 117 S. Ct. 2312, 138 L.
            Ed. 2d 849; see Summers v. Earth Island Institute, 555 U. S. 488, 497, 129 S. Ct. 1142,
9           173 L. Ed. 2d 1 (2009); Gladstone, Realtors v. Village of Bellwood, 441 U. S. 91, 100, 99
            S. Ct. 1601, 60 L. Ed. 2d 66 (1979) ('In no event . . . may Congress abrogate the Art. III
10          minima')."

11
            To establish injury in fact, a plaintiff must show that he or she suffered "an invasion
12          of a legally protected interest" that is "concrete and particularized" and "actual or
            imminent, not conjectural or hypothetical." Lujan, 504 U. S., at 560, 112 S. Ct. 2130, 119
13          L. Ed. 2d 351 (internal quotation marks omitted).

14
15  Id. at 1547-48. An injury-in-fact requires more than the recitation of a statutory violation, and

16  requires a plaintiff to demonstrate a "concrete" injury from the violation. Id. at 1549 ("standing

17  requires a concrete injury even in the context of a statutory violation"). To be concrete, the injury

18  "must be '*de facto*'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" Id.

19
20          Plaintiff's Complaint does not identify a concrete injury resulting from the alleged ECPA

21  violation. Instead, Plaintiff alleges only intermittent and fleeting battery consumption and other

22  "wear and tear" on her smartphone. (Compl. ¶ 61.) This exact alleged harm has been repeatedly

23  rejected as a "concrete injury" by Courts in this district and elsewhere. See, e.g., Opperman v.

24  Path, Inc., 87 F. Supp. 3d 1018, 1055-56 (N.D. Cal. 2014)("Because Plaintiffs have not quantified

25  or otherwise articulated the alleged resource usage, they fail to allege an injury that can serve as

26  the basis of standing."); Hernandez v. Path, Inc., 2012 U.S. Dist. LEXIS 151035, *4, 89 Fed. R.

27  Evid. Serv. (Callaghan) 971, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012)("Plaintiff identifies

28

three injuries to establish Article III standing [including] diminished mobile device resources, such as storage, battery life, and bandwidth . . . The specific harm caused by diminished resources of which Plaintiff complains is *de minimis*: depletion of 'two to three seconds of battery capacity.'").[2]

This Court recently recognized that incidental resource use, without more, fails to establish a concrete injury-in-fact (even when paired with an alleged statutory violation) sufficient to confer Article III standing. In <u>Supply Pro Sorbents, LLC v. RingCentral, Inc.</u>, No. C 16-02113 JSW, 2016 U.S. Dist. LEXIS 140033 (N.D. Cal. Oct. 7, 2016), plaintiff asserted a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and alleged injuries consisting of the unauthorized use of its fax machine, data lines, paper, toner, and employee time, coupled with intrusions upon privacy and the inability to use the fax machine during the receipt of an offending fax. These incidental intrusions, though painstakingly enumerated, failed to constitute a concrete injury:

> However, in order to have standing to allege a violation of this provision of the TCPA, a plaintiff must allege more than a mere statutory violation. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"). For this reason, Plaintiff may not "allege a

---

[2]  Although some decisions have held that battery drainage constitutes a concrete injury, they are distinguishable. See, e.g., <u>In re Google, Inc. Privacy Policy Litig.</u>, No. C-12-01382-PSG, 2013 U.S. Dist. LEXIS 171124, at *21 (N.D. Cal. Dec. 3, 2013)("Plaintiffs here specifically allege a greater discharge of battery power as a result of unauthorized conduct and as in *iPhone I* the discharge is systemic rather than episodic. This is sufficient to establish more than a *de minimis* injury.") The distinction between *systemic* and *episodic* resource use is critical to this finding, as illuminated by the Court in <u>In re Carrier IQ, Inc., Consumer Privacy Litig.</u>, 78 F. Supp. 3d 1051, 1066-67 (N.D. Cal. 2015), in which the Court acknowledged that "The Plaintiffs' bare assertion that Carrier IQ 'taxed' each Plaintiff's 'battery, processor, and memory' ***would likely be insufficient to state a sufficient injury-in-fact for standing purposes*** [emphasis added]." In <u>Carrier IQ</u>, the plaintiff additionally alleged that "the Carrier IQ Software is always operating and cannot be turned off. . . Taking these allegations as true, and drawing all plausible inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have sufficiently alleged that the Carrier IQ Software has had a 'systemic,' rather than 'episodic,' effect on the resources of Plaintiffs' mobile devices." <u>Id.</u> at 1067. No such allegations can be found in the current case, however – indeed, Plaintiff concedes that the App, and its resource burden, can be "hard-stopped" at any time, *unlike* the Carrier IQ Software. See Compl. ¶ 30 (alleging that the utility is engaged until the App "is closed—either when the consumer's smartphone is shut off or when the consumer 'hard closes' the App."). By definition, therefore, any resource use is episodic and, therefore, *de minimis*.

bare procedural violation, divorced from any real harm, and satisfy the injury-in-fact requirement of Article III." Id. (citing Summers v. Earth Island Institute, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.").

*Here, the Court finds that Plaintiff has failed to meet the constitutional requirements to establish standing to sue. Plaintiff has not demonstrated that it has actually suffered an injury-in-fact which is concrete and imminent, and not conjectural or hypothetical*. In order to establish an injury-in-fact, "the injury plaintiff alleges must be unique to that plaintiff, one in which he has a 'personal stake' in the outcome of a litigation seeking to remedy that harm." Schmier v. United States Court of Appeals for the Ninth Circuit, 279 F.3d 817, 821 (9th Cir. 2002). Plaintiff has failed to articulate any unique and concrete injury — beyond merely alleging a statutory violation — that was caused by the incidental transmission of an identifier at the bottom of a four-page facsimile.

In its complaint, Plaintiff alleges that "[u]nsolicited faxes damage their recipients. *A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipient's fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message*." (Complaint at ¶¶ 7, 52.) Although these facts may generally be true of unsolicited fax advertisements, it is not clear how Plaintiff alleges it specifically suffered these particular harms from the single line identifier on the optional cover sheet of a solicited four-page fax it received.

Id., 2016 U.S. Dist. LEXIS 140033, at *7-8 (emphasis added). Although Supply Pro Sorbents concerns claims regarding a different piece of technology and a different federal statute, the analysis in fully applicable here: incidental resource use, even one that "interrupts the recipient's privacy," simply does not constitute concrete injury.

Plaintiff has failed to demonstrate any concrete injury-in-fact, and therefore lacks standing to invoke the limited jurisdiction of this Court. Because Plaintiff has not established standing, the Court should dismiss the Complaint under Rule 12(b)(1).

## II.   Plaintiff's Complaint Fails to State a Claim for Relief

The ECPA provides a private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520. An ECPA plaintiff "may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." Id. The ECPA defines oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation," and defines "interception" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(2), (4).

Plaintiff has failed to allege any facts demonstrating an "interception" of an "oral communication," within the meaning of the ECPA, by any Defendant. Most critically, Plaintiff has failed to allege a *single* conversation (whether by date, location, counterparty or otherwise) that the Defendants allegedly "intercepted." Her failure is fatal to any claim for relief under the ECPA.

Plaintiff will, undoubtedly, respond that the Complaint alleges that the microphone was "always on" and always "listening in" to her conversations in various unnamed "places" where she "would have" private conversations with various unnamed people. Such generic, nonspecific allegations constitute a mere recitation of the elements of her claim, not a statement of any actual facts, and fail to satisfy the pleading requirements of *Twombly* and *Iqbal*. ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'")

The Ninth Circuit has cautioned that "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on . . . the absence of sufficient facts alleged under a cognizable theory."). Plaintiff has failed to allege any facts demonstrating a facially plausible claim – let alone sufficient facts to give fair notice to YinzCam and the other Defendants to enable them to defend effectively.[3] The Complaint should be dismissed.

## CONCLUSION

For all of these reasons, this Court should grant YinzCam's Motion to Dismiss with prejudice, enter judgment in favor of YinzCam and against Plaintiff on Plaintiff's Class Action Complaint, and award YinzCam its fees and costs.

Dated: November 1, 2016

LAW OFFICES OF STEPHEN M. FLYNN

By: /s/ Stephen M. Flynn
Stephen M. Flynn (245823)
Attorneys for Defendant YinzCam, Inc.

---

[3] These pleading deficiencies are particularly stark for YinzCam, as to whom Plaintiff articulated only two allegations of fact in the entire Complaint. (Compl. ¶¶ 2, 24.) Nor is it sufficient for Plaintiff simply to lump the Defendants together and hope to attribute the conduct of one to the others. See Kirch v. Embarq Mgmt. Co., 702 F.3d 1245, 1246 (10th Cir. 2012)("The ECPA imposes civil liability on those who unlawfully intercept electronic communications. . . This language does not encompass aiders or abettors. The only persons liable are those who engaged in 'that violation.' And the natural reading of 'that violation' is the 'intercept[ion], disclos[ure], or intentional[] use[] . . . in violation of [the statute].' In other words, 'the person or entity . . . which engaged in that violation' is the person or entity that 'intercepted, disclosed, or intentionally used' the communication.") Plaintiff has made no allegations that YinzCam engaged in any such violation.