1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (rhodesmg@cooley.com)
   WHITTY SOMVICHIAN (194463)
3  (wsomvichian@cooley.com)
   MAX A. BERNSTEIN (305722)
4  (mbernstein@cooley.com)
   101 California Street, 5th Floor
5  San Francisco, CA  94111-5800
   Telephone:   (415) 693-2000
6  Facsimile:   (415) 693-2222

7  Attorneys for Defendants
   GOLDEN STATE WARRIORS, LLC and
8  SIGNAL360, INC. (f/k/a SONIC NOTIFY, INC.)

9                      UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                          OAKLAND DIVISION

12

13  LATISHA SATCHELL, individually and on      Case No.  4:16-cv-04961-JSW
    behalf of all others similarly situated,
14                                             **DEFENDANTS GOLDEN STATE WARRIORS,**
15                    Plaintiff,               **LLC AND SIGNAL360, INC.'S (F/K/A SONIC**
                                               **NOTIFY, INC.) MOTION TO DISMISS**
16         v.                                  **PLAINTIFF'S CLASS ACTION COMPLAINT**
                                               **(FED. R. CIV. P. 12(b)(1) & 12(b)(6))**
17  SONIC NOTIFY, INC. d/b/a SIGNAL360, a
    Delaware Corporation, YINZCAM, INC., a     Date:        January 27, 2017
18  Pennsylvania Corporation, and GOLDEN       Time:        9:00 a.m.
    STATE WARRIORS, LLC, a California          Courtroom:   5 – 2nd Floor
19  Limited Liability Company,                              1301 Clay Street
                                                            Oakland, CA 94612
20                    Defendants.
                                               Judge:       Hon. Jeffrey S. White
21                                             Trial Date:  None Set

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 27, 2017, Defendants Golden State Warriors, LLC ("Warriors") and Signal360, Inc. ("Signal360") (collectively, the "Defendants") will move to dismiss Plaintiff's Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice Plaintiff's Complaint and each of the claims alleged therein for failure to state a claim upon which relief can be granted and for lack of standing.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Has Plaintiff alleged sufficient facts to show that Defendants violated 18 U.S.C. 2510, *et seq.* (the "Wiretap Act" or the "Act") where the Complaint contains no allegation that any of the Defendants ever acquired any recording of any oral communication involving the Plaintiff.

2.  Has Plaintiff alleged sufficient facts to show a concrete injury as needed for Article III standing, where the only allegations of harm in the Complaint are conclusory references to unspecified communications and an unquantified loss of phone resources.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

## Table of Contents

**Page**

I.    SUMMARY OF ARGUMENT ............................................................................................ 1

II.   INTRODUCTION ........................................................................................................... 2

III.  STATEMENT OF FACTS ............................................................................................... 3

      A.    The Parties. ........................................................................................................ 3

      B.    Beacon Technology Generally.......................................................................... 3

      C.    Signal360's Beacon Technology. ..................................................................... 4

      D.    Plaintiff's Alleged Harm................................................................................... 6

IV.   APPLICABLE STANDARDS ......................................................................................... 6

V.    ARGUMENT ................................................................................................................. 7

      A.    Plaintiff's Wiretap Act Claim Should Be Dismissed....................................... 7

            1.    Plaintiff's claim of an illegal "interception" fails because the
                  Complaint confirms that Defendants did not "acqui[re]" any of her
                  communications. ................................................................................... 7

            2.    Plaintiff's claim of an alleged unlawful "use" fails for additional
                  reasons. ................................................................................................. 9

      B.    Plaintiff Lacks Article III Standing Because She Has Suffered No Injury In
            Fact From Her Use Of The App. ..................................................................... 10

VI.   CONCLUSION............................................................................................................. 16

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

## Table of Authorities

**Page**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................10

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................. *passim*

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010) ...............................................................................14

*DeSoto v. Yellow Freight Sys. Inc.*,
    957 F.2d 655 (9th Cir.1992) ...................................................................................16

*Duqum v. Scottrade, Inc.*,
    No. 4:15-CV-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016).....................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..........................................................................................7, 11

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..................................................................................6

*In re Google Android Consumer Privacy Litig.*,
    No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .....................15

*In re Google, Inc. Privacy Policy Litig.*,
    No. 12–cv–01382– PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)......................15

*In re Google, Inc. Privacy Policy Litig.*,
    No. 5:12cv-001382-PSG, 2015 WL 4317479 (N.D. Cal. July 15, 2015)..............14, 15

*Gubala v. Time Warner Cable, Inc.*,
    No. 15-CV-1078-PP, 2016 WL 3390415 (E.D. Wis. June 17, 2016).........................11

*Hernandez v. Path, Inc.*,
    No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012)......................14

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................15

*Khan v. Children's Nat'l Health Sys.*,
    No. CV TDC-15-2125, 2016 WL 2946165 (D. Md. May 19, 2016)............................12

*Kirch v. Embarq Management Co.*,
    2011 WL 3651359 (D. Kan. Aug. 19, 2011), *aff'd* 702 F.3d 1245 (10th Cir. 2012) ......................7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................11, 13

*McCollough v. Smarte Carte, Inc.*,
    No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016)......................................11

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .........................................................................................6

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    No. 12-CV-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ......................12, 13

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...........................................................1, 14, 15

*Raines v. Byrd*,
    521 U.S. 811 (1997)......................................................................................................11

*Romero v. Dep't Stores Nat'l Bank*,
    No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016).................11

*Singhal v. Mentor Graphics Corp.*,
    2007 WL 7143978 (N.D. Cal. Oct. 17, 2007)..............................................................16

*Smith v. Ohio State Univ.*,
    No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016)...............................12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).................................................................................1, 11, 12, 13

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) .........................................................................6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .........................................................................................................6

*Supply Pro Sorbents, LLC v. Ringcentral, Inc.*,
    No. C 16-02113 JSW, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016) ..........................1, 11

*In re Toys R Us, Inc. Privacy Litig.*,
    No. 00–CV–2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ..................................9

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ...................................................................................1, 7

*Valentine v. WideOpen W. Fin., LLC*,
    288 F.R.D. 407 (N.D. Ill. 2012)....................................................................................8

*Villanueva v. Wells Fargo Bank, N.A.*,
    No. 13CV5429 CS-LMS, 2016 WL 5220065 (S.D.N.Y. Sept. 14, 2016)....................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

*Wall v. Mich. Rental*,
   No. 15-13254, 2016 WL 3418539 (E.D. Mich. June 22, 2016) .....................................13

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ...........................................................................................6

**Statutes**

18 U.S.C. § 2510.............................................................................................................1, 2, 7

18 U.S.C. § 2511.........................................................................................................1, 7, 9, 10

**Other Authorities**

Federal Rules of Civil Procedure

   Rule 12(b)(1).............................................................................................................6

   Rule 12(b)(6).............................................................................................................6

Cooley LLP
Attorneys At Law
San Francisco

-iv-

**Golden State Warriors, LLC and Signal360, Inc.'s
Motion to Dismiss Complaint
(Case No. 4:16-cv-04961-JSW)**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    SUMMARY OF ARGUMENT**

3        Plaintiff's Complaint should be dismissed as a matter of law for the following reasons:

4        First, to state a claim for an illegal interception of a communication under the Wiretap Act, a

5    plaintiff must show that a defendant "acqui[red]" that communication.  18 U.S.C. 2510(4).  Under

6    Ninth Circuit precedent, an acquisition occurs where the defendant comes into actual possession of

7    the communication.  *United States v. Smith*, 155 F.3d 1051, 1055 n.7 (9th Cir. 1998).  The

8    Complaint does not allege that the Defendants came into possession of any recorded communication

9    and thus fails to state a claim for an "interception" under the Wiretap Act.  *See In re Carrier IQ, Inc.*,

10   78 F. Supp. 3d 1051, 1076 (N.D. Cal. 2015) ("*In re Carrier IQ*") (dismissing interception claim

11   under the Wiretap Act as to defendants that were not alleged to have come into possession of

12   plaintiffs' communications).

13       Second, Plaintiff also alleges that Defendants used intercepted communications in violation

14   of § 2511(1)(d) of the Wiretap Act.  But that section imposes liability only on the use of

15   communications intercepted *in violation* of § 2511(1)(a) in the first instance.  Because Plaintiff fails

16   to allege any interception, her claim for improper use fails as a matter of law as well.

17       Finally, Plaintiff has not alleged an injury in fact, as required for this Court to have

18   jurisdiction under Article III of the Constitution.  The Supreme Court's recent decision in *Spokeo*

19   makes clear that a plaintiff must allege an injury in fact even where she alleges a statutory violation.

20   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("*Spokeo*"); *see also Supply Pro Sorbents, LLC*

21   *v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016)

22   (White, J.).  Plaintiff's sole allegation of injury is that there was wear and tear on her phone and that

23   her phone lost battery power.  But these conclusory allegations fail to establish a concrete harm that

24   can support standing.  *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014).

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-1-
GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

## II.   INTRODUCTION

This case involves Plaintiff's challenge to a type of "beacon" technology incorporated in certain mobile applications ("apps"), which allows users of the apps to receive promotions and other content on their phones based on their location. The technology works by detecting an audio signal (inaudible to humans) emitted by a beacon that can be installed at various locations (for example, in a retail store).

Plaintiff goes through great pains to portray this technology in sinister, anthropomorphic terms (*e.g.*, "the App is listening"), but the truth bears little resemblance to the sensationalist claims of the Complaint. If this case proceeds, Defendants are fully prepared to show that the beacon technology does *not* "record" or "intercept" anyone's communications; indeed, it *cannot* do so by design.[1] The case, however, should *not* proceed beyond the pleadings. Even assuming the false assertions of the Complaint as true, Plaintiff's claims still fail for multiple reasons and the Complaint should be dismissed as a matter of law.

***First***, even if the technology in dispute does create audio recordings that could include a user's communications (which it does not), the Complaint concedes that any such recordings remain *on the user's phone* and are *never transmitted beyond the device to any Defendant*. Accordingly, Defendants could not have committed an illegal "intercept[ion]" within the meaning of the Wiretap Act, which requires an "*acquisition* of the contents" of an "oral communication." 18 U.S.C. 2510(4) (emphasis added). Without facts to show that Defendants actually "acqui[red]" Plaintiff's private communications—which Plaintiff cannot truthfully assert—it is insufficient to merely allege that recordings of audio data were created that remained at all times on Plaintiff's own phone. Plaintiff's effort to manufacture a Wiretap Act claim thus fails as a matter of law.

***Second***, the Complaint does not allege facts showing that Plaintiff suffered any concrete harm, as needed to demonstrate standing under Article III of the Constitution. Plaintiff says she downloaded an app with the beacon technology to her phone, and had the phone with her in "places where she would have private conversations." (Compl. ¶ 34.) But this conclusory assertion hardly

---

[1] Signal360 publicly discloses the operation of the beacon technology at: http://www.signal360.com/legal/signalx-privacy.html.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

amounts to the type of concrete harm that Article III demands, particularly given that none of the audio data processed by the app ever leaves the phone. Recognizing that there is no viable claim of any privacy-related injury, Plaintiff relies instead on allegations that the app in dispute caused unspecified "wear and tear" on her phone and depleted the phone's battery power. But these are not the kinds of harm the Wiretap Act was intended to protect against, and thus cannot support Article III standing for Plaintiff's Wiretap Act claims. Nor has Plaintiff plausibly asserted that the alleged violations (as opposed to the uncontested aspects of the app's operation) caused the alleged "wear and tear" and loss of battery power on her phone. Plaintiff's bald allegations of lost phone resources fail as a matter of law to demonstrate the injury-in-fact required by Article III.

For these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety. Moreover, the dismissal should be with prejudice because Plaintiff cannot cure the defects of her claims.

## III. STATEMENT OF FACTS

### A. The Parties.

The Warriors are a professional basketball team based in Oakland, California. Signal360 is a technology company incorporated in Delaware, with its principal place of business in New York. Signal360 develops the beacon technology in dispute. Defendant Yinzcam, Inc. ("Yinzcam") is a technology company incorporated in Pennsylvania, with its principal place of business in Pittsburgh. Yinzcam develops and distributes apps for the Warriors and other professional sports teams.

Plaintiff Latisha Satchell is a resident of the State of New York who alleges she used the official Warriors app, developed by Yinzcam, that uses the Signal360 technology (the "App").

### B. Beacon Technology Generally.

"Geomarketing" is a widely used approach to advertising in which ads are served based on the location of the customer.[2] As a result, ads are more relevant and timely than they otherwise would be. A mobile smartphone ("phone") can determine its own location for geomarketing purposes by measuring the distance between the phone and nearby radio towers. But other methods

---

[2] *See generally* https://en.wikipedia.org/wiki/Geomarketing.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-3-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

allow for greater accuracy. Beacon technology has emerged as a key method for pinpoint geomarketing, and its use is widespread.[3]

Traditionally, beacon technology has relied on the Bluetooth protocol. A "beacon" installed in a store or stadium will emit Bluetooth signals unique to that beacon. As a customer walks by, her phone will detect the Bluetooth beacon signals and deduce its own location based on which beacon it interacts with. Ads, promotions, and other relevant information can then be served accordingly. (Compl. ¶¶ 3, 20.) For example, a patron at a sporting event that walks by a hot dog stand might be served a coupon for a discounted hot dog. (*See id.*) The use of beacon technology in sporting facilities is now commonplace, with one report finding that over 90% of Major League Baseball stadiums and over 50% of National Basketball Association arenas employ beacon technology.[4]

### C.     Signal360's Beacon Technology.

Instead of using Bluetooth signals alone, Signal360's innovative beacons also emit a "unique audio signal." (*Id.* ¶ 22.) Apps with this Signal360 technology "analyze" audio data, received through a phone's microphone, to detect the "unique audio signal" of a beacon and "ascertain a consumer's physical location through sounds rather than radio signals." (*Id.* ¶¶ 22, 30.) This, in turn, allows users to receive "promotions, or advertisements based on their location." (*Id.* ¶ 3.) The Warriors' App, developed by Yinzcam, utilizes this Signal360 technology. As Plaintiff acknowledges, when a user downloads the App, he or she is presented with a request for permission to use the microphone function of the user's phone. (*Id.* ¶ 26.)

While Plaintiff goes to great lengths to portray the beacon technology as some sinister form of surveillance, the reality could not be more different. First, the App does not "listen" to human communications in any sense. As Plaintiff recognizes, the App is "programmed . . . to analyze and monitor the picked-up audio *for any of the Signal360 beacon tones*"—*not* to record conversations or

---

[3] Plaintiff cites and links in her Complaint (and thereby incorporates by reference) to an article that describes the dramatic uptick in beacon technology, including its use by Macy's, Major League Baseball, and American Airlines. *Beacon Technology: The Where, What, Who, How and Why*, http://www.forbes.com/sites/homaycotte/2015/09/01/beacon-technology-the-what-who-how-whyand-where/#668c740b4fc1 (last visited Aug. 26, 2016).
[4] *See* http://www.mediapost.com/publications/article/281220/sports-teams-go-big-on-beacons-in-93-of-mlb-stad.html.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

other communications among people.[5]  (*Id*. ¶ 31 (emphasis added).)  Nor does the App create a permanent recording of audio data that can be accessed by anyone.  Plaintiff recognizes as much, alleging that the App only "*temporarily* records portions of the audio for analysis."[6]  (*Id*. (emphasis added).)  What Plaintiff neglects to explain (but presumably knows based on her counsel's purported "forensic" testing, (Compl. ¶ 29)) is that the Signal360 beacon signals are *inaudible* and the App is programmed to detect only signals *in that specific inaudible frequency*,[7] meaning the App does not record anyone's communications within the meaning of the Wiretap Act.

For purpose of this Motion, the most critical fact is that all of the alleged acts are done *by the App on the user's phone* and *no audio data ever leaves the device*.  The Complaint tries to obscure this point, but the allegations tacitly concede it.  Plaintiff does not allege that the App ever transmitted any of her communications, or any other audio data for that matter, to any server or device beyond the phone itself.  To the contrary, the Complaint repeatedly and exclusively focuses on "*the App*" itself as performing the alleged wrongful acts *on the user's phone*.  (*See, e.g.*, Compl. ¶¶ 4, 5, 29-31.)  For example, it is "the App" that "temporarily records portions of the audio" using the phone's microphone; it is the "the App" that "monitor[s] the picked-up audio" for a beacon signal; and it is "the App" that will "automatically respond" by displaying an ad or promotion if it

---

[5] The Signal360 Privacy Policy explains:  "All audio data received by the App is stored for a short time in the device's transient buffer memory which is constantly being deleted and overwritten with newer audio data. The length of the audio data stored in transient buffer memory at any given time before it is overwritten with newer audio data is up to one millisecond. *None of the audio data received by the App is retained by or transmitted from your device to Signal360 servers, Beacons, or any other device*. The App scans the audio data received by your device's microphone for the high frequency signal emitted by the Beacon and discards the audio data of all other frequencies. As described above, the non-discarded high frequency data is only stored in increments of up to one millisecond and is subsequently overwritten by new high frequency data in one millisecond increments. . . . *To put plainly: (i) Our App does not at any time store more than up to one millisecond of your microphone's surrounding audio data; (ii) our Technology then filters and uses only the high frequency wavelengths (not audible to the human ear) of the audio data it stores for our Services; (iii) our App does not transmit any of the audio data it captures outside of your phone (neither to our servers or to any third party servers); and (iv) all audio data captured by our App is deleted and overwritten in up to one millisecond increments.*" http://www.signal360.com/legal/signalx-privacy.html (emphasis added).
[6] In fact, the recordings are only a millisecond in length and are deleted from the phone's buffer memory almost immediately after they are captured.   http://www.signal360.com/legal/signalx-privacy.html.
[7] "The App scans the audio data received by your device's microphone for the high frequency signal emitted by the Beacon and discards the audio data of all other frequencies." http://www.signal360.com/legal/signalx-privacy.html.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-5-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

1    detects a signal.  (*Id.* ¶ 31.)  The Complaint does not allege—because it is not true—that any of these

2    steps involves sending any information beyond the phone itself to any outside server.    The

3    Complaint thus effectively confirms that no audio data containing any communication is ever sent

4    to, or received by, any of the Defendants.

## D.    Plaintiff's Alleged Harm.

6        Plaintiff alleges she downloaded the App and had it open on her phone at unspecified times

7    between April 2016 and July 11, 2016.  (Compl. ¶ 33.)  She says that, in that time, she had her phone

8    with her at "places where she would have private conversations."  (*Id.* ¶ 34.)  She does not allege any

9    further facts to identify or describe any of these alleged "private conversations."  Nor does she allege

10   whether the App was turned on at those times.  Rather, the only harm Plaintiff alleges she suffered

11   was "wear and tear" on her phone and lost battery life.  (*Id.* ¶ 52 ("Plaintiff and members of the

12   Class have been injured by and through the wear and tear on their smartphones, consuming the

13   battery life of their smartphones, and diminishing their use, enjoyment, and utility of their devices."),

14   ¶ 61 (same).)  Plaintiff does not clarify what wear and tear the alleged Wiretap Act violations caused

15   or how the alleged violations depleted her phone's battery life.  Nor does she attempt to quantify

16   either alleged harm.

17   **IV.    APPLICABLE STANDARDS**

18       Under Rule 12(b)(6), a court must dismiss claims when "there is no cognizable legal theory

19   or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250

20   F.3d 729, 732 (9th Cir. 2001).  The Court need not accept as true "allegations that are merely

21   conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec.*

22   *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), and is "free to ignore legal conclusions, unsupported

23   conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

24   allegations."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D.

25   Cal. 2011) (citation omitted).

26       A court must also dismiss claims under Rule 12(b)(1) where a plaintiff has failed to establish

27   standing under Article III of the U.S. Constitution.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

28   2000); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  Article III limits federal

1    jurisdiction to cases in which a plaintiff has suffered "injury in fact" that is "actual or imminent,"

2    "fairly traceable" to the defendant's actions, and likely to "be redressed by a favorable decision."

3    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

4    **V.    ARGUMENT**

5          **A.    Plaintiff's Wiretap Act Claim Should Be Dismissed.**

6                **1.    Plaintiff's claim of an illegal "interception" fails because the Complaint
7                confirms that Defendants did not "acqui[re]" any of her communications.**

8            To state a claim under the Wiretap Act, Plaintiff must show that a defendant "intentionally

9    ***intercepts***, endeavors to intercept, or procures any other person to intercept or endeavor to intercept,

10   any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added). The

11   Wiretap Act defines "intercept" to mean the "***acquisition*** of the contents of any . . . oral

12   communication[.]"[8]  18 U.S.C. 2510(4) (emphasis added). The "contents" of a communication is

13   defined to include "any information concerning the substance, purport, or meaning of that

14   communication." *Id.* at (8).

15           The Ninth Circuit has held that an "acquisition" for purposes of the Wiretap Act means the

16   "act of acquiring, or ***coming into possession of***." *Smith,* 155 F.3d at 1055 n.7 (emphasis added); *see*

17   *also In re Carrier IQ*, 78 F. Supp. 3d at 1076 ("The term 'acquisition' is not defined in the statute,

18   but the Ninth Circuit, looking at the term's 'ordinary meaning' has defined it as the 'act of acquiring,

19   or coming into possession of.'"). The court in *Kirch v. Embarq Management Co.* similarly noted:

20   "Although the term 'acquisition' is not defined by the statute, 'to acquire' commonly means '***to***

21   ***come into possession, control, or power of disposal***.' Thus, it follows that in order to 'intercept' a

22   communication, one must come into possession or control of the substance, purport, or meaning of

23   that communication." *Kirch*, No. 10-2047-JAR, 2011 WL 3651359, at *6 (D. Kan. Aug. 19, 2011)

24   (emphasis added), *aff'd,* 702 F.3d 1245 (10th Cir. 2012).[9]

25   _____

     [8] Plaintiff alleges that Defendants intercepted her "oral communications." (Compl. ¶¶ 48, 57.)
26   Because "oral communications" are at issue, the Wiretap Act imposes additional requirements to
     establish liability. The Act defines the kind of oral communication that can be intercepted as "any
27   oral communication uttered by a person ***exhibiting an expectation that such communication is not***
     ***subject to interception under circumstances justifying such expectation***[.]" 18 U.S.C. § 2510(2)
28   (emphasis added). But Plaintiff does not specify any communication she alleges was intercepted.
     [9] These interpretations are consistent with the plain meaning of the term. Merriam Webster's

Thus, based on these statutory definitions as a construed by the Ninth Circuit, Plaintiff must allege facts to show that Defendants "acqui[red]"—by actually "coming into possession of"—"the substance, purport, or meaning" of her oral communications, in order to state a claim under the Wiretap Act.  The Complaint does not allege these necessary facts.  As discussed above, the Complaint merely states that "the App" temporarily recorded audio data that then remained on Plaintiff's phone.  (Compl. ¶ 31.)  The Complaint does not identify *any* oral communication that was allegedly "listened to" by Defendants.  Furthermore, the Complaint does not allege, because it is not true, that the App ever caused any audio data of any kind (let alone the contents of an oral communication) to be transmitted beyond Plaintiff's phone to any server or device controlled by any Defendant.  This glaring omission effectively confirms that Defendants never came into possession of the contents of Plaintiff's oral communications in any sense.  As a result, there can be no "acquisition" and no "interception" of any oral communications as a matter of law.[10]

The court in *In re Carrier IQ* dismissed a Wiretap Act claim in similar circumstances.  There, plaintiffs alleged that software on their mobile phones intercepted, among other things, the content of their text messages and internet search inquiries, and relayed that content to certain defendants.  *In re Carrier IQ*, 78 F. Supp. 3d at 1062.  The court found that the complaint adequately alleged an interception as to those defendants who allegedly came into possession of the communications.  *Id*. at 1075-82.  But as to other defendants, the court found there were "no allegations" that they had "actually received copies of Plaintiffs' text messages or internet search inquiries."  *Id*. at 1087.  The court dismissed the Wiretap Act claim as a matter of law with respect to those defendants given the plaintiffs' failure to allege the necessary element of an "acquisition."  *Id.* at 1090; *see also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill. 2012) (distinguishing between a defendant that "actually accessed" the content of communications and a defendant that did not, and

---

Dictionary defines acquisition as "the act of acquiring."  *Acquisition*, Merriam-Webster's Dictionary (available at: http://www.merriam-webster.com/dictionary/acquisition) (last checked Oct. 30, 2016).  The term "acquire," in turn, is defined to mean "to come into possession or control of."  *Acquire*, Merriam-Webster's      Dictionary      (available      at:      http://www.merriam-webster.com/dictionary/acquire) (last checked Oct. 30, 2016).
[10]   That Plaintiff has alleged an "interception" in conclusory fashion does not overcome this deficiency.  *In re Carrier IQ*, 78 F. Supp. 3d at 1087 (rejecting plaintiffs' argument that bald allegations of interception were sufficient to establish acquisition).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

granting motion to dismiss as to the latter).  Here too, the Complaint fails to allege that Defendants "actually received" the contents of any oral communications, and Plaintiff's claim for an "interception" must be dismissed as a matter of law.

With respect to the Warriors, Plaintiff not only fails to allege any "acquisition" of any communication, she concedes that the Warriors merely provided a platform that included allegedly problematic technology developed *by others*.  (Compl. ¶¶ 2, 3.)  Courts have rejected Wiretap Act liability in such circumstances.  *E.g.*, *In re Carrier IQ*, 78 F. Supp. 3d at 1088–89; *In re Toys R Us, Inc. Privacy Litig.*, No. 00–CV–2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001).  In *In re Carrier IQ*, the court noted:  "Plaintiffs have failed to cite any case that would support the imposition of Wiretap Act liability on a party who merely provided a means through which a third party subsequently intercepts communications.  To the contrary, authority has consistently rejected such a theory of liability."  78 F. Supp. 3d at 1088.  Similarly, in *In re Toys R Us, Inc. Privacy Litigation*, Toys R Us was alleged to have allowed a third party to install cookies on the browsers of customers that visited Toys R Us's website.  2001 WL 34517252, at *1-2.  The court agreed with Toys R Us, who argued it could not "be held liable under an aiding and abetting theory because the private cause of action created by § 2520(a) does not provide for liability of aiders and abetters" and plaintiffs had not alleged that Toys R Us itself had intercepted any communication.  *Id.* at *6.  Here as well, Plaintiff does not allege, other than in conclusory terms, that the Warriors intercepted any communications.  Instead, the Complaint concedes that the Warriors "offer[] a mobile application" that "was developed" by others and integrates beacon technology from others.  (Compl. ¶¶ 2, 3.)

**2.**     **Plaintiff's claim of an alleged unlawful "use" fails for additional reasons.**

In addition to claiming an illegal "interception," Plaintiff also asserts that Defendants violated § 2511(1)(d) of the Wiretap Act by "using" the contents of intercepted communications.  (Compl. ¶¶ 50, 59.)  As an initial and dispositive matter, these claims of improper "use" fail because they require a showing that the communications were "intercepted" in violation of the Wiretap Act in the first place.  Section 2511(1)(d) prohibits the use of "the contents of any wire, oral, or electronic communication" if the defendant knew that the "information was obtained through the interception of a wire, oral, or electronic communication *in violation of this subsection.*"  (emphasis

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-9-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

added).  A defendant can only be liable under § 2511(1)(d) for using the contents of communications that were unlawfully intercepted under § 2511(1)(a).  Because the Complaint does not allege that any communications were unlawfully intercepted (because no Defendant came into possession of any of Plaintiff's communications), Plaintiff's claim of an improper "use" also fail as a matter of law.

Moreover, Plaintiffs' "use" claims fail for additional, independent reasons.  Plaintiff alleges that the App is designed to specifically detect audio signals emitted from Signal360 beacons. (Compl. ¶ 31 ("Defendants programmed the App to analyze and monitor the picked-up audio for any of the Signal360 beacon tones.").)  These audio signals are then used to determine the phone's location, as described above.  (*See* § III(C), *supra*.)  The beacon signals are the only audio data "used" by the App, and such audio data does not constitute "contents."  Even if the phone incidentally captures fragments of oral communications in the course of detecting a beacon signal, there is no allegation that these fragments are "used" to determine the phone's location or to provide marketing and promotions to the user.[11]  Rather, as Plaintiff describes the process, the App directs the phone to use only the beacon signals themselves.  (*See* Compl. ¶ 31 ("[I]f the App hears a transmitter's audio signal in its recordings, the App will automatically respond [.]").)  This limited use of Defendants' own beacon signals[12] cannot violate the Wiretap Act.

### B.   Plaintiff Lacks Article III Standing Because She Has Suffered No Injury In Fact From Her Use Of The App.

Even if Plaintiff had pleaded facts sufficient to show a Wiretap Act violation, the Complaint would still fail for another independent reason: the complete lack of any cognizable injury.  Under Article III of the Constitution, a plaintiff must demonstrate an "injury in fact" that is "actual or

---

[11] Plaintiff does allege that Defendants use "oral communications belonging to Plaintiff and members of the Class as soon as technically feasible and use the contents of those communications to its economic benefit, including for marketing purposes."  (Compl. ¶¶ 50, 59.)  But these conclusory allegations alone, which merely parrot the statutory language, are insufficient.  Plaintiff alleges no facts supporting this bare assertion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, these allegations of use are contradicted by the Complaint's more specific allegations.
[12] To the extent that the beacon signals emitted by Signal360's beacons can be termed communications, Signal360 would be a party to those communications.  Signal360 indisputably consented to the capture of the signals it emitted as that was the very purpose for emitting them. Where one party to communication consents, there can be no unlawful interception.  18 U.S.C. § 2511(2)(d).  Because the capture of beacon signals does not violate § 2511(1)(a), the use of those signals does not violate § 2511(1)(d).  Therefore, Plaintiff has not alleged that Defendants used the contents of any communication that was unlawfully intercepted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

1    imminent" and "fairly traceable" to the defendant's actions.  *Friends of the Earth*, 528 U.S. at 180-

2    81.  It is the plaintiff's burden, even at the pleadings stage, to show standing.  *Lujan v. Defenders of*

3    *Wildlife*, 504 U.S. 555, 561 (1992).

4            The Supreme Court's recent decision in *Spokeo* makes clear that even where a statutory

5    violation is alleged, a plaintiff must still plead an injury to survive dismissal.  Under Article III, a

6    plaintiff does not automatically satisfy the "injury-in-fact requirement whenever a statute grants a

7    person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*,

8    136 S. Ct. at 1549.  That is to say, "Congress cannot erase Article III's standing requirements by

9    statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v.*

10   *Byrd*, 521 U.S. 811, 820 n.3 (1997); *accord Spokeo*, 136 S. Ct. at 1547–48.  Thus, Plaintiff must

11   allege facts to demonstrate that she suffered an injury-in-fact from using the App, in addition to

12   alleging the bare elements of a Wiretap claim.  *Supply Pro Sorbents*, 2016 WL 5870111, at *3

13   ("Plaintiff merely identifies its injury as the alleged statutory infraction.  That is insufficient for the

14   purpose of alleging Article III standing").

15           In this vein, the court in *Spokeo* reiterated that an injury-in-fact must "be '*de facto*'; that is, it

16   must actually exist."  *Spokeo*, 136 S. Ct. at 1548.  Mere technical violations of a statute do not create

17   standing in the absence of actual, *de facto* injury.  *See, e.g., id.* at 1549 (finding a "bare procedural

18   violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement);

19   *McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108, at *3 (N.D. Ill. Aug. 1,

20   2016) ("While it is a technical violation of section 14/15(b)(2), McCollough does not allege any

21   harm that resulted from the violation."); *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078-PP,

22   2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) (finding "no allegations in the [complaint]

23   showing that the plaintiff has suffered a *concrete* injury as a result of the defendant's retaining his

24   personally identifiable information [in violation of a statute]."); *Romero v. Dep't Stores Nat'l Bank*,

25   No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *3 (S.D. Cal. Aug. 5, 2016) (similar).

26           Even assuming that Plaintiff has alleged a Wiretap Act violation, which she has not, she has

27   at most shown a technical violation of the statute that is "divorced" from any concrete harm.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

1  Plaintiff does not allege that Defendants somehow intruded on any recognized privacy interest.[13]

2  She does not allege, for example, that the App allowed the Defendants (or anyone else) to ever come

3  into possession of, or to have access to, any of her private conversations, as discussed above.  (*See* §

4  V(A)(1), *supra*.)  While she alleges that she "carried her smartphone to locations where she would

5  have private conversations and the App was continuously running on her phone" (Compl. ¶ 35),

6  these conclusory assertions do not demonstrate any harm.  Indeed, to find an injury based on the bare

7  allegations in this case—involving automated processing that created at most a "temporary"

8  recording of audio data that never left Plaintiff's phone and was never accessible by anyone—would

9  create an entirely novel form of intangible injury that would be virtually unbounded.

10      The court in *Nei*, interpreting *Spokeo*, rejected a wiretap claim for lack of standing because of

11  similar defects.  *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-

12  01685-BAS(JLB), 2016 WL 4886933, at *5 (S.D. Cal. Sept. 15, 2016).  In *Nei*, the court considered

13  a wiretap claim under the California Invasion of Privacy Act, California's analog to the Wiretap Act.

14  Even though the plaintiff's phone call in that case was recorded and accessed by the defendant, the

15  Court nonetheless found Plaintiff did not tie the violation to any injury, as Plaintiff did not allege

16  that the interception itself had caused him harm.  *Id*. ("Even if Hanson violated CIPA, the Court

17  finds that NEI has not suffered a concrete or particularized injury by the violation.").

18      Recognizing that the Complaint's alleged violations are not plausibly connected to any

19  concrete privacy harms, Plaintiff relies on a more attenuated theory.  Plaintiff's sole allegation of

20  injury is that she and the class have "been injured by and through the wear and tear on their

21  smartphones, consuming the battery life of their smartphones, and diminishing their use, enjoyment,

---

[13] Even if the Complaint did allege that Plaintiff suffered a loss of privacy, which it does not, she would still have to tie that loss to specific harm she suffered as a result. *See, e.g., Khan v. Children's Nat'l Health Sys.*, No. CV TDC-15-2125, 2016 WL 2946165, at *6 (D. Md. May 19, 2016) ("Khan argues that the data breach has caused a loss of privacy that constitutes an injury in fact. However, she has not identified any potential damages arising from such a loss and thus fails to allege a 'concrete and particularized injury.'"); *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001, at *7-8 (E.D. Mo. July 12, 2016) ("Here, Plaintiffs do not allege any facts demonstrating that they suffered any damages or injury due to a loss of privacy or breach of confidentiality."); *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) ("In this case, Plaintiffs allege they suffered harm when their 'privacy was invaded and they were misled as to their rights under the FCRA.'  However, Plaintiffs admitted that they did not suffer a concrete consequential damage as a result[.]") (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-12-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)

1  and utility of their devices." (Compl. ¶ 52.) This allegation fails to satisfy Plaintiff's burden to

2  show standing for three reasons.

3       **First,** the alleged wear and tear and loss of battery life are not the kinds of harm that the

4  statute was intended to protect against. In *Nei*, the plaintiff alleged he was injured not by the

5  recording of his conversation itself, but because the recording was not made available to him earlier.

6  *Nei Contracting & Eng'g, Inc.*, 2016 WL 4886933, at *5. The court found "[t]his is not the injury

7  CIPA was designed to protect." *Id*. Other courts interpreting *Spokeo* have also tied the concreteness

8  inquiry to whether the harm alleged is of the kind the statute was intended to protect against. *E.g.*,

9  *Wall v. Mich. Rental,* No. 15-13254, 2016 WL 3418539, at *3 (E.D. Mich. June 22, 2016) (finding

10  no standing where there was no allegation of "the sort of harms the statute was intended to

11  prevent"); *Villanueva v. Wells Fargo Bank, N.A.*, No. 13CV5429 CS-LMS, 2016 WL 5220065, at *4

12  (S.D.N.Y. Sept. 14, 2016) (finding "Plaintiffs' bare-bones pleadings [did] not sufficiently allege a

13  concrete injury" where plaintiffs did not suffer "the concrete harm that these statutory provisions

14  [were] intended to address"). Here, the Wiretap Act was drafted to prohibit the interception of

15  communications, not to ensure that a phone's battery life is preserved. *See e.g.,* Senate Report No.

16  99-541, to accompany S. 2575, October 17, 1986 (explaining that the Act was passed to combat the

17  interception of wire, oral and electronic communications). Plaintiff's alleged injury is far afield of

18  the injury the statute's drafters sought to prevent, and as such cannot cure Plaintiff's lack of injury.

19       **Second**, the alleged wear and tear and loss of battery life do not stem from the alleged

20  violations. *Lujan*, 504 U.S. at 560 ("there must be a causal connection between the injury and the

21  conduct complained of—the injury has to be 'fairly traceable to the *challenged action* of the

22  defendant'") (emphasis added) (internal alterations omitted). Plaintiff must show that her alleged

23  injury is causally connected to the conduct she alleges violated the Act. *Id*. That means Plaintiff

24  must show that her phone's resources were degraded, not by the Defendants conduct generally, but

25  by the alleged unlawful interceptions specifically. Plaintiff concedes that the App has many features

26  that do not violate the Wiretap Act. The Complaint notes that the App allows users to "'View live

27  stats, scores and standings' and to 'Use #DubNation to share [their] game experience by uploading

28  photos and videos to Facebook, Twitter, Instagram, Pinterest, Google+, Tumblr and more.'"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-13-
**GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S**
**MOTION TO DISMISS COMPLAINT**
**(CASE NO. 4:16-CV-04961-JSW)**

(Compl. ¶ 25 (brackets in original).)  Plaintiff cannot rely on the resource degradation traceable to these and other uncontroversial features of the App.  Moreover, Plaintiff has not alleged that the capture and processing of beacon signals violates the Wiretap Act—and any such allegation would be implausible.  (*See* n.12, *supra*.)  So, Plaintiff must plausibly allege that the incidental capture of *oral* communications, *on its own*, degraded Plaintiff's phone resources.  *See In re Google, Inc. Privacy Policy Litig.*, No. 5:12cv-001382-PSG, 2015 WL 4317479, at *6 (N.D. Cal. July 15, 2015) (finding "Plaintiffs' claim of battery and bandwidth depletion has no nexus to Google's alleged breach or unfair competition" because depletion was not caused by the challenged capture of personal information specifically).  But Plaintiff has alleged no facts that support this dubious claim.[14]  Where the alleged injury cannot be traced to the challenged action, a complaint should be dismissed.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**Third**, courts in the Northern District of California have rejected similar bald allegations of resource degradation.  The court in *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *2 (N.D. Cal. Oct. 19, 2012), found that the alleged loss of battery life was *de minimis* and therefore inadequate.  The *Hernandez* plaintiffs contended that discovery would allow them to develop their resource degradation allegations, but the court found that discovery was not needed for plaintiffs to determine the resources lost on their own phones.  *Id*. at *2 n.2.  In *Opperman*, Plaintiffs alleged, in language that closely resembles the allegations in the present complaint, that "the unauthorized transmissions and operations used iDevice resources, battery life, energy and cellular time at a cost to Plaintiffs and caused loss of use and enjoyment of some portion of each iDevice's useful life."  *Opperman*, 87 F. Supp. 3d at 1056 (N.D. Cal. 2014).  The court found:  "Because Plaintiffs have not quantified or otherwise articulated the alleged resource usage, they fail to allege an injury that can serve as the basis of standing."  *Id*.  The court in *In re Carrier IQ* found that "Plaintiffs' bare assertion that Carrier IQ 'taxed' each Plaintiff's 'battery, processor, and memory' would likely be insufficient to state a sufficient injury-in-fact for standing purposes."  *In re Carrier*

---

[14] Plaintiff has not, for example, alleged that a phone with the App running loses battery life at a faster rate if its microphone is in range of a conversation than if it is in a room where no conversation is taking place.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *IQ*, 78 F. Supp. 3d at 1066.  The *In re Carrier IQ* court found standing only because the complaint

2    identified research that demonstrated that the software in question degraded performance in specific

3    ways and because the software could not be turned off, therefore rendering the degradation

4    "systemic" instead of "episodic."  *Id.* at 1066-67.  Similarly, this Court has found that developed

5    allegations of continuous resource use, tied to the interruption of services, can satisfy the standing

6    requirement in the context of claims based on state computer crime laws.  *In re Google Android*

7    *Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *5 (N.D. Cal. Mar. 26,

8    2013) (White, J.) ("*Google Android Litig.*").  In *Google Android Litig.*, plaintiffs alleged that the

9    resource use was "intensive" and "material," and substantiated that claim by alleging that a

10   "recommended method for resource conservation is to minimize GPS use" and by quantifying the

11   frequency of resource use.  (First Am. Compl., *Google Android Litig.*, at ¶¶ 21, 95 (N.D. Cal. Jan.

12   23, 2012), ECF 24.)  Importantly, plaintiffs there alleged, and this Court relied on, specified *injuries*

13   connected to the resource use—that the use interrupted plaintiffs' services and caused detrimental

14   "chemical changes in the active battery material."  (*Id.* ¶¶ 97, 98.)  Even with these developed

15   allegations tied to alleged injuries, something entirely absent in the present Complaint, this Court

16   found that standing was a "close question."  *Google Android Litig.*, 2013 WL 1283236, at *5.  Here

17   Plaintiff fails to quantify the alleged resource usage or to plausibly allege that the usage was not *de*

18   *minimis*.[15]  Moreover, Plaintiff has not plead that the alleged resource usage interfered with any

19   service, caused any specific damage, or was systemic.

20          For each of these three reasons, Plaintiff has not shown Article III standing.

21   ─────────────────────

22   [15] Some other decisions in this District that predate *Opperman* and *In re Carrier IQ* found that
     developed allegations of resource degradation, plausibly tied to the actions challenged in the
     complaint, could support standing.  *In re Google, Inc. Privacy Policy Litig.*, No. 12–cv–01382–

23   PSG, 2013 WL 6248499, at *7 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy Policy Litig.*"); *In re
     iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054 (N.D. Cal. 2012) ("*In re iPhone*").  These

24   decisions have encouraged plaintiffs to add allegations of lost battery life to their Complaints in the
     hope of curing standing defects (as appears to be the case here).  But a deficient complaint cannot be

25   saved simply because the plaintiff adds boilerplate language regarding lost battery life.  The courts in
     *Opperman* and *In re Carrier IQ* reviewed the holdings in *Google Privacy Litig.* and *In re iPhone*,

26   and *then* found that conclusory allegations of resource use were *not* adequate to establish standing.
     *Opperman*, 87 F. Supp. 3d at 1056 (finding conclusory allegations of battery use were insufficient);

27   *In re Carrier IQ*, 78 F. Supp. 3d at 1066 (finding that "bare" assertions of resource use "would likely
     be insufficient").  Moreover, as discussed above, the court in *Google Privacy Litig.* later dismissed

28   the claims with prejudice because of a lack of standing.  2015 WL 4317479, at *6.

**VI.    CONCLUSION**

For these reasons, the Court should dismiss the Complaint with prejudice as matter of law.[16]

Dated:  November 1, 2016                         COOLEY LLP

                                                 _/s/ Whitty Somvichian_

                                                 Attorneys for Defendants
                                                 GOLDEN STATE WARRIORS, LLC and
                                                 SIGNAL360 Inc. (f/k/a SONIC NOTIFY, INC.)

137909967

---

[16] Because the App is designed so that Defendants cannot acquire oral communications, no amendment can cure the fatal flaws in Plaintiff's claims.  Where amendment is futile, dismissal with prejudice is warranted.  _Singhal v. Mentor Graphics Corp._, 2007 WL 7143978, at *4 (N.D. Cal. Oct. 17, 2007) (_citing DeSoto v. Yellow Freight Sys. Inc.,_ 957 F.2d 655, 658 (9th Cir.1992) (White, J.).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-16-

GOLDEN STATE WARRIORS, LLC AND SIGNAL360, INC.'S
MOTION TO DISMISS COMPLAINT
(CASE NO. 4:16-CV-04961-JSW)